Next case would be 071098 Southern Grouts v. Laticrete Intl. Mr. Burton. Mr. Burton. Whenever you're ready. No rush. May I proceed? You may. Thank you. May it please the court. Mr. Crisfero. Sean Burkin on behalf of Plaintiff Appellant Southern Grouts v. Mortars. Here on a patent infringement case wherein the district court grants a summary judgment pursuant to the prosecution history estoppel. So I guess the question really on appeal is what was surrendered and how does that affect or I guess what exceptions should apply and how does that affect the patent infringement case? Upon initially filing its prosecution or its patent claim to the examiner, Southern Grouts v. Mortar utilized the term cement. Dr. Pomeroy on behalf of Southern Grouts v. Mortar used the term cement, cementaceous product. Within the prior art, there were certain other patents that encompassed. So upon suggestion of the examiner, the term cement was replaced with hydraulic cement. I'm sorry, with Portland cement which was described as a hydraulic cement. Why isn't that a classic example of prosecution history estoppel? Because within the claim, it was shown that the intent of Dr. Pomeroy was not to exclude all epoxies. That was clear in both the example which reads on claim 10 and in a letter accompanied by an affidavit to the examiner which specifically stated, this patent shall be utilized and is different than the prior art because it is an opaque epoxy as opposed to a transparent epoxy which was contained in the prior art, the Anders patents. You're referring to example 7. Correct. That's a dependent claim though. So you'd have to go back to the main claim in order to see what the scope is. Well, it wouldn't be a dependent claim in that the epoxy was standing in place of the Portland cement because they were synonymous as it pertained to the opaque epoxy. The reason it was limited, I'm sorry. Is there any Portland cement that is an epoxy? They're synonymous and in fact it's described in the background of Laticrete's patent. Portland cement is synonymous with epoxy? They're not synonymous but they're equivalent. They're equivalent but that doesn't mean they're the same thing. I mean, is there any epoxy that is a Portland cement? Is there any Portland cement that is an epoxy? Yes, there is hydraulic cement which is an epoxy which is demonstrated in... I mean, hydraulic cement is certain kinds of cement. Correct. As I understand it, one kind of hydraulic cement is Portland cement. Correct. Now, Portland cement is the area to which your client has staked a claim. My question is, is there an epoxy that is a Portland cement or is there a Portland cement that is an epoxy? Well, there's an epoxy that is a hydraulic cement. I understand that but you're drawing a distinction which eviscerates my question. My question is, is there a Portland cement that is an epoxy and is there an epoxy that is a Portland cement? No. No? No, the answer is no. But it was clear that the intent of Dr. Pomeroy was to utilize something to avoid the prior art but to include an epoxy which should have been the hydraulic cement. Now, if written in hindsight, it would have said hydraulic cement and then we probably wouldn't be here. But you are here and you're here because it says Portland cement instead of hydraulic cement. Correct. But the reason for the narrowing and the intention of Dr. Pomeroy, which is also kind of necessary to determine what was narrowed and what wasn't narrowed, and that's the reason why there's an argument and that's why we're here, is because it was clear his intent was to utilize a hydraulic cement, something that would avoid the prior art. The actual utilization of the term Portland cement is essentially Dr. Pomeroy being penalized for taking the suggestion of the examiner which said, well, you can't use all cement because that's all-encompassing. What you should use is a hydraulic cement. We suggest you use Portland cement. He took the examiner's suggestion without nitpicking and fighting, and he used Portland cement which was a type of hydraulic cement with the understanding, at least as the record shows, that that included epoxy and opaque epoxy which would overcome the prior art which was the transparent epoxy. That is clearly stated in the record. So there are opaque epoxies that are hydraulic cement. Correct. And that's specifically delineated in Dr. Pomeroy's letter to the examiner which is part of the record here for the summary judgment. So the history is probably littered with patentees who wish they had used another word in a claim. What makes this different? I mean, what are your best cases in our precedent that would allow us to go back and revisit a clear amendment, a change, clear language put in the claim, and your suggestions that afterwards this isn't really what he meant to say? Okay, the Super Guide Corp. v. Direct TV 358F3870. It says prosecution history is always relevant to the claim construction. It is also true that the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage. Yes, but the facts of that case don't correspond to this, do they? I mean, here you used a clear word, Portland. There's no dispute, I mean, absent, I mean, that there's clear language in the claim. Correct. The clear word that you put in. Correct. So, I mean, I guess to begin with, such a disclaimer must be made with a reasonable clarity and deliberateness. So we have to make, I guess this court has to make a determination as to whether or not Dr. Pomeroy clearly intended to disclaim everything from cement to Portland cement. But does that principle apply, does that standard apply when the limitation, when the disclaimer appears actually in an amendment, in your client's own words in an amendment? Well, I guess. As opposed to the general back and forth with the office. Right, well, I mean, you know, I guess the old back and forth is a negotiation, but essentially what my client is being penalized for, or Dr. Pomeroy is being penalized for, is by taking the suggestion of the examiner. What I guess he should have done was, you know, continue to fight with the examiner. I mean, that's what, to hold that he be precluded from utilizing the hydraulics amendment, which was his clear intention. When people stop negotiating and settle for less than what they want, then they get less than what they want. You're saying should they continue to fight with the examiner? And I suppose that, you know, you continue to negotiate until you get what you're ready to settle for. But it was clear from Dr. Pomeroy's intent that he did not give that up. And that's illustrated by example 7, which reads into claim 10, which says these are all, you know, equivalents to. And so with that, based on the background, which discusses not only the epoxy, but other types of materials that can be utilized in this patent. That's in this patent. And, in fact, it's even shown in the LATICRETE patent, where the prior art discusses, well, the epoxy is essentially the same as Portland cement. You know, it doesn't wash as easily and it cracks, but they're basically the same thing. And so in Dr. Pomeroy's mind, which is clearly evident in the record, he still maintained and he still had the patent over the epoxy. And, in fact, the only thing he was disclaiming was the transparent epoxy, which was in the Anders patent. And that's why he narrowed it in his mind. And it's clear by the record, I mean, if we want to use the strict claim preclusion, then example 3 of the Festo 8 exception shows that he didn't intend to disclaim and it was just a tangential change in the way he articulated it. Well, the figure feeding into 10, isn't that overridden by the cascading of the amendment in claim 1 that infects all of the subordinate claims or independent claims? Well, if it was, then that would deem example 7 in claim 10 superfluous, which the courts say they're loath to do. Well, how about if you give that full credit as a dependent claim, what does it do to the independent claim? Is that superfluous? No. No. No, it's not because what you're doing is by utilizing the epoxy as opposed to the Portland cement, you're coming out with almost exactly the same product. And that's what he was trying to illustrate. To find otherwise would essentially cause other patentees to, they would just limit the examples because what you're doing is you're giving other people ideas as how to steal your patent. But just including an example in a specification doesn't mean as a matter of law that the claims cover it in any way, shape, or form, right? No. No. I understand that. What I'm saying is that by virtue of the inclusion of the claim in the allowance by the examiner in the USPTO, that shows some idea that the epoxy was going to be covered because to find otherwise, because since it was granted, since they were granted the patent, to find otherwise would find that example 7 and claim 10 would be superfluous, which the case law clearly suggests that you should try not to do. I don't know if I'm going to stop now. Why don't we hear from the other side and you can come back and respond, reply. Mr. Curcio? Good morning. May it please the court, Robert Curcio for defendant appellee of Latter Creek International. I'd like to get right to some of the issues that Judge Jacobs talked about because I think looking to the intent of the patentee and talking about things such as opaqueness and transparency, I think we'll go further along in my discussion. First, looking at the Rule 132 affidavit that Dr. Pomeroy put in, the history behind that was that there was, of course, first a rejection. The rejection was that where the examiner had stated, if you put in Portland cement, you can overcome the prior art of the two Anders patents, the 024 patent and the 491 patent. It's important that there's two here. For reasons I'll get into later, one of them is transparent epoxy, the other is opaque epoxy. But the examiner is essentially saying if you want to get over epoxy-based compositions, put in Portland cement. And he says Portland cement is a hydraulic cement, so Portland cement appears to be a subset. You're saying one of the Anders patents was for an opaque epoxy? Yes. Anders 491 is an opaque epoxy. If you look at Anders 491, column 8, lines 29 through 37, it reads in pertinent part that epoxy-based marking materials of the above composition can be applied to surfaces in much the same manner as the polyurethane-based materials described above and may contain essentially the same colorant paint substances described above. Weren't they transparent? They're adding it to paint. The final grout composition, if you will, is paint, is opaque paint with epoxy in it, with phosphorescence in it with it. So it's an epoxy-based composition. The epoxy that's in it, however, is transparent. But the epoxy, unlike the 024 patent, which is painted onto the road surface so that it doesn't cover the lines on the road, is transparent and phosphorescent. In this, they're adding it so that the final composition, as shown in example 14... Well, if you add anything that is transparent to something that is opaque, you won't be able to see through it. So if you had a window and you put a black shade in front of it, you can't see out of it. That doesn't keep the window from being transparent by its fundamental nature. Correct, correct. I'm not arguing that. But the final composition ends up being an opaque composition, which is what is taught in Anders 491. It can be an opaque composition which includes a transparent epoxy. That's correct. But the examiner didn't reject the patent over Anders based on opaqueness or transparency. He based it on an epoxy-based composition. He said, these are epoxy-based compositions. In original claim 1, it said cementitious material. Claim 10 said cementitious material consisting essentially of epoxy-based composition, more or less those words. So the examiner is saying, if you want to get over epoxy-based compositions, then put in Portland cement. And that's what they did to overcome both Anders patents. But do you agree that example 7 can't include Portland cement? I agree example 7 can't, but example 7 is not claimed. Claim 10 was supposed to be example 7 when claim 1 did not have Portland cement. It just had cementitious material. Now that it has Portland cement, you have a combination. Claim 1 comprising Portland cement. Claim 10 saying we're in said cementitious material. It consists essentially of epoxy-based composition. Don't forget the appellant did not appeal the finding of literal infringement where the district court found Portland cement to be in every single claim. They didn't appeal that. So Portland cement was found properly, I believe, to be in every single claim. And it is in claim 1, the only independent claim of the patent. So if you read it through, claim 10 has to include, by proper claim construction, Portland cement as part of its composition. And I believe the district court was correct in that statement. But following through, I'm sorry. I take it your argument is the district court was either correct or the district court was wrong and no appeal was taken. My argument would be the district court was correct. Yes, but you're saying if the district court was wrong, that doesn't matter because no appeal was taken. Had they been wrong, then I would agree. No appeal was taken. So the prosecution history went through the rejection in Appendix 115. And then there was the introduction in the amendment to Portland cement, Appendix 124. That's an October 15, 2002 amendment. On October 29, 2002, the examiner removes the Anders patents from consideration. And the reason the examiner gives is in A133, where he says, I'm removing the Anders patent because Portland cement has been added to the claim. And that's right out of the examiner's statement. So that there is, based on this, an amendment, a claim-narrowing amendment substantially made for patentability. Therein brings the Festo presumption, which the patentee appellant needs to rebut. And we know the three factors of the Festo presumption, and they were not rebutted. Our position is they're not entitled to a doctrine of equivalence on this claim construction. I might add, as a side note, that there is a possibility, and we never had to get to this at the district court level, whether or not Claim 10 is valid, given that it teaches a Portland-based element of Claim 1, along with epoxy-based compositions of Claim 10. And there is no example that includes a Portland cement with an epoxy-based composition. So there's no support in the specification for Claim 10. But I agree, Your Honor, it's not before us right now. So with the chronology of an October 15th amendment, and then October 29th statement from the examiner saying, I'll accept Portland cement to overcome the Anders patents, what the examiner then said was, but you still have Johansson. Johansson's in front of you, and it has Portland cement in it. You've got to get over that. And then the 132 affidavit comes in, and a review of the prosecution of history shows that the 132 affidavit came in on March of 2003, five months after the examiner said, I'll remove Anders. So he comes in, he says, we're over Johansson because Johansson is fluorescent, and we're phosphorescence. And there's a difference in when the incident light hits a fluorescent object, it will glow, but then upon removal of the incident light energy, within a matter of milliseconds, you're going to lose your glow. Phosphorescence. Fluorescence? That's fluorescence. It's evanescent. When the light's on it, it glows. Lights off, it doesn't. Exactly. And phosphorescence, as argued in the 132 affidavit, is a longer glow, eight hours on the order of hours versus milliseconds. So Johansson had phosphorescence, and they argued in the 132 affidavit, we're different, we have fluorescence. That doesn't get them over Anders. Both Anders, 491 and 024, are phosphorescence. And if you go to Anders 491, you can see that in the abstract. You can see it in column 2, lines 51 through 57. That's the 491. You can also see phosphorescence in the 024 patent, column 4, lines 34 through 46. The point is Anders taught phosphorescence, so they weren't trying to argue over Anders anymore. That was already removed four months ago. They're trying to argue over Johansson, which is a Portland cement-based patent and taught Portland-based cement. So the examiner looked at the 132 affidavit and removed Johansson based in part on that argument. Actually, the examiner gives the argument of having a rare earth illuminate element as being the reason for getting over Johansson, but in any event, he took into consideration the 132 affidavit. So there was no argument by the patentee to remove the epoxy-based compositions because of transparency or opaqueness or because of phosphorescence versus fluorescence. It was to remove Johansson, the Portland cement-based patent. I'd also like to bring your attention to the issue of hydraulic cement just a little further, bring it up clearer. If the patentee were allowed to substitute hydraulic cement for Portland cement, that is, make the term interchangeable, as opposed to Portland cement being a subset of hydraulic cement, that's not where this prosecution history went. The examiner clearly put out in front of the patentee, Portland cement is in hydraulic cement. You can get over this. The patentee had more than ample opportunity, and they were supported by counsel, to put in the claim hydraulic cement. But let's assume, for sake of argument, that he did put in the claim hydraulic cement and not Portland cement. We'd still be here today. There would still be a claim-narrowing amendment substantially related to patentability to overcome an epoxy-based composition prior art. And that's what the accused device is. It's an epoxy-based composition. So they would still be there with hydraulic cement, and they would still have this equivalence argument, and they would still have to get over the Festo presumption. And they failed to do that. If we consider also that Portland cement is interchangeable with hydraulic cement, again, for the sake of argument, then we'd have to look to their admission, because they admit it during discovery that the accused device does not contain Portland cement. And if they're going to be held to an interchanging term of Portland cement as the same as hydraulic cement, then their admission is the accused device does not have hydraulic cement because they're going to use it interchangeably, and they should be held to that definition. We're still back here in that argument. And so it does come down to, is this a claim-narrowing amendment, was it substantially related to patentability, and do they get over the Festo presumptions? Well, it's clearly not unforeseeable. It's there in front of us, epoxy-based compositions. It's also not merely tangential. It appears no more than a mere tangential relationship. To the extent that the change was made to overcome prior art that has the equivalent in question, this court had found in Festo 9 that you can't claim mere tangentialness in that circumstance. So they can't get over that prong of the test as well. The third prong is this other factors, which includes issues of language and whether or not you had the opportunity to explain it. Clearly, epoxy-based composition was not a surprise. They had an example in their patent. It was brought out by the examiner. It was in the prior art. So they failed to rebut the Festo presumption. That means that they failed to be able to apply the doctrine of equivalence, as the district court properly found, to Portland cement. We're left with now them claiming that there is no Portland cement in Claim 10. And that goes against the claim construction, as we know it from the dependent claim, including all the limitations of the space claim plus any intervening claims. And if you do that and you do it properly, you have to find that there's Portland cement in Claim 10. This district court found, based on admission and the facts in front of it, that there was no Portland cement in the accused product. There's no element there to show that there's an infringement. So we look to the analysis of the Festo and its progeny. We look to the rebuttable presumption. They failed there, and now we're left with looking at whether or not there's a way that they can either claim that there's no Portland cement in Claim 10, and they base it on an attempt of a 132 affidavit that did not address the epoxy-based composition. It was trying to get over Johansson. And whether or not Portland cement can be interchangeable with hydraulic cement, which I posit to you doesn't matter. We're still here if we call it hydraulic cement. I think on one last note, I'd like to point out two cases that were brought up in the red brief, one of them being Narayan, where this court had found that it frequently happens that the patentee surrenders more through an amendment than may have been absolutely necessary to avoid a particular prior art. And in such cases, this court found in 77 USPQ 2nd 1247, in such cases, we have held the patentee to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to. And I think that applies well to this case in the sense that if they want to try and extend beyond Portland cement, that they should be held to Portland cement in their loss of equivalence. And lastly, the case of Pioneer Magnetics, I think, is also on point. In Pioneer Magnetics, there was a very similar situation where the court also found prosecution history estoppel and did not allow the doctrine of equivalence for the same kind of reasons as we have here, where there was a claim-narrowing amendment right on point to the accused device, and the prior art was the equivalent. All right, I have 40 seconds left. I believe I'm done. Thank you. All right, thank you. Mr. Burkin? May I proceed? Yeah, thank you. But none of the argument from LATICRETE explains the contents of the letter, which was issued after the amendment, after the amendment that supposedly narrowed the claim, in which Dr. Pomeroy specifically states, another key feature of luminescence of its application in turbid solutions, here we feel that Anders wishes the epoxy coating to be transparent so that markings beneath the coating are still visible. Our claim for epoxy grout, we wish to make opaque and have the luminescence scatter for effect. In your last correspondence, you agreed with us on this point. This shows that not only Dr. Pomeroy, but the examiner, as it pertains to this letter, after the amendment was made, were including the epoxy, were including the opaque epoxy. What is the date of that letter from the examiner? October 29, 2002. October 9th? No, 29th. 29th. 2002. That was after the amendment. It clearly shows that both Dr. Pomeroy and the examiner were contemplating the opaque epoxy within the patent. Sunday's Court v. Memorandum, 415 F. 3rd, 1278. The Court must always read the claims in view of the full specification. Claim construction that excludes a preferred embodiment is rarely, if ever, correct. And that pertains to Example 7 demonstrated in Claim 10, wherein it clearly states that there is the epoxy. Excuse me, are you referring to the letter from the examiner on 222 of the appendix? No, the letter from Dr. Pomeroy to the examiner. That's dated by hand, anyway, in July of 2002. No, no, no, the letter from Dr. Pomeroy to the examiner, which was October 29, 2002. Oh, so that's to the examiner. Yes, correct. I mean, with regards to, I don't know if it's a hearsay issue, but the Eleventh Circuit allows for hearsay to be utilized to defeat summary judgment if it can be made admissible in trial. Plus, there's argued that's an offshore aviation Eleventh Circuit case. But what is the significance of a letter sent by someone seeking an expansive reading of a patent to the examiner after a narrowing of the patent has been made in order to achieve patentability? Well, I guess the letter shows both... It shows what's in your client's mind. But it also shows what's in the examiner's mind, because in your last correspondence, you'd agreed on this point. In your last correspondence, I was referring, I think, to the document on page 222, and that's dated in July. July comes before the October Amendment. It's the same year. So what you have is you have the examiner's statement, which is favorable to your position, followed by the amendment, which your adversary claims is not, followed by a letter from your client referring to a point of view that the examiner held before the filing of the amendment. Am I correct? That is correct. That's a matter of chronology. Correct, correct. But with regards to the letter and then the subsequent utilization of the claim that included the epoxy, as an example... That's example seven. Correct. All of that in conjunction... I mean, this was a summary judgment hearing. So all there has to be is one genuine issue of material fact. There's two, three, four, five. What does that describe? What does hydraulic... Is the term limited to Portland cement or everyone's understanding of what was being prosecuted, which was hydraulic cement? Does that include hydraulic cement? Does that include epoxy? Does that include only opaque epoxy? Does that include transparent epoxy? Those are all issues of fact which weren't determined because there was no markment hearing to, I guess, delineate what the claim was. Since the record contains so many questions as to what's claimed, what's not claimed, what does this term mean, what does this term not mean, then there obviously were at least genuine issues of material fact. We weren't here on my summary judgment but on theirs. Thank you. All right, thank you. Case is submitted.